MARIE KLEIN,

Plaintiff,

VERSUS

ATP FLIGHT SCHOOL, LLP, ADAM ROSENBERG,
JIM KOZIARSKI, AND KELVIN KING,

Defendants.

───────────────

**MEMORANDUM AND ORDER**
July 3, 2014

───────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff Marie Klein ("Klein" or "plaintiff") commenced this action against ATP Flight School, LLC ("ATP"),[1] Adam Rosenberg ("Rosenberg"), Jim Koziarski ("Koziarski"), and Kelvin King ("King") on March 7, 2014, alleging harassment, discrimination, and retaliation on the basis of her sex. The gravamen of plaintiff's complaint is that defendant Rosenberg subjected plaintiff to severe sexual harassment, and that the other defendants did nothing to stop him even after plaintiff brought the issue to their attention. Plaintiff brings claims of discrimination and retaliation against ATP under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681−88; discrimination claims against all defendants under the New York State and New York City Human Rights Laws; aiding and abetting claims against all individual defendants under the New York State Human Rights Law; and claims of assault, battery, and intentional infliction of emotional distress against Rosenberg.

Presently before the Court is a motion to compel arbitration and dismiss this action filed by ATP, Koziarski, and King

---

[1] There appears to be some confusion as to the entity being sued. The caption of the complaint lists ATP Flight School, LLP; however, paragraph five of the complaint refers to that defendant as ATP Flight School, LLC. (*See* Compl. ¶ 5.) In her declaration in support of the present motion, counsel for defendants avers that ATP Flight School, LLP does not exist. (*See* Decl. of Robyn Gnudi Kalocsay, May 2, 2014 ("Kalocsay Decl.") ¶ 1.) Moreover, attached to plaintiff's counsel's declaration is a record of ATP Flight School, *LLC* (not *LLP*) from the Florida Department of State. (*See* Decl. of W. Gordon Kaupp, May 30, 2014 ("Kaupp Decl.") ¶ 9 & Ex. 3.) It thus appears clear from both the complaint and the parties' submissions that the proper defendant is ATP Flight School, LLC, not ATP Flight School, LLP.

(collectively, the "ATP defendants"). In the alternative, the ATP defendants request that this Court stay plaintiff's claims against them in favor of arbitration. For the reasons set forth herein, the Court stays plaintiff's claims against the ATP defendants in favor of arbitration; however, the Court cannot compel arbitration in Georgia, as the parties' arbitration agreement provides.

I. BACKGROUND

A. Factual Allegations

The following facts are taken from the complaint. These are not findings of fact by the Court. Instead, the Court recites these allegations in order to provide context for the instant motion.

Plaintiff enrolled in ATP's career pilot program in March 2013, and she began attending flight school at MacArthur Airport in Suffolk County, New York, the next month. (Compl. ¶¶ 18, 24.) While a student at ATP, plaintiff alleges that she was subject to sexual harassment by Rosenberg, who administered Federal Aviation Administration ("FAA") exams known as "check-rides" and instructed ATP students in the classroom and flight simulator. (*See generally id.* ¶¶ 26–58.) In general, plaintiff claims that Rosenberg made unwelcome sexual advances toward her and, on two occasions, masturbated in front of her. (*See generally id.*)

According to plaintiff, she and her flight instructor reported Rosenberg's actions to King, ATP's Regional General Manager for the Northeast, in September 2013. (*Id.* ¶¶ 61–68.) Despite plaintiff's reports of sexual harassment by Rosenberg, ATP allegedly took no action to stop the sexual harassment, and the sexual harassment continued. (*Id.* ¶ 70.) Plaintiff further alleges that her husband called Koziarski, ATP's Vice President of Operations, on October 8, 2013, and Koziarski told him that plaintiff was being expelled from the program. (*Id.* ¶ 74.) The next day, ATP expelled plaintiff from the career pilot program. (*Id.* ¶¶ 75–76.)

B. The Arbitration Agreements

When plaintiff enrolled at ATP on March 13, 2013, she signed a "Flight School Agreement, Waiver of Liability, Release, and Agreement to Arbitrate" (the "Agreement"). (*See* Kalocsay Decl. Ex. A, Agreement.) The Agreement contained the following arbitration clause:

> Trainee acknowledges that this Agreement and ATP's provision of flight training services constitute transactions involving interstate commerce and agrees that this Agreement and related disputes are governed by the Federal Arbitration Act. Trainee agrees that any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or relating to this Flight School Agreement and Waiver of Liability or the relationships which result from this contract, including the validity or enforceability of this arbitration clause or any part thereof or the entire contract, shall be resolved by binding arbitration under the Rules of the American Arbitration Association and the Federal Arbitration Act in Atlanta, Georgia. The Arbitration panel will consist of three members, all of whom must be pilots, and the chairman must be a lawyer. Each party will select one arbitrator and the selected arbitrators will choose the chairman. The parties exclusively select the application of Georgia substantive law without resort to

2

Georgia's conflicts of law rules to resolve legal issues that may arise in the course of such arbitration or any litigation between the parties. In the event a party brings a lawsuit in violation of this agreement, the violating party shall be responsible for all expenses, including attorneys' fees, incurred in enforcing this arbitration agreement. In the event of any litigation arising from or related to this agreement or any other agreements or dealings between the parties, the parties select as the sole and exclusive venue for any such litigation the state and federal courts in Atlanta, Georgia.

(*Id.*) Plaintiff signed her initials next to the arbitration clause and signed the agreement. (*Id.*)

Plaintiff signed another agreement, entitled the "Flight Training and Refund Policy" (the "Policy"), on April 17, 2013. (Kalocsay Decl. Ex. B, Policy.) The Policy also contained an arbitration clause, which reads as follows:

> Trainee agrees that, upon the sole and exclusive election of ATP, any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or relating to Trainee's enrollment in any ATP flight training program or any dealings or agreements between ATP and Trainee, including the validity or enforceability of this arbitration clause or any part thereof or any other matter, shall be resolved by binding arbitration under the Rules of the American Arbitration Association in Jacksonville, Florida. The Arbitration panel will consist of three members, all of whom must be pilots, and the chairman must be a lawyer. Each party will select one arbitrator and the selected arbitrators will choose the chairman. The parties exclusively select the application of Georgia substantive law without resort to Georgia's conflicts of law rules to resolve legal issues that may arise in the course of such arbitration or any litigation between the parties. Should any such controversy arising from or related to this agreement or any other agreements or dealings between the parties be litigated rather than arbitrated, the parties select as the sole and exclusive venue for any such litigation the state and federal courts in Jacksonville, Florida.

(*Id.*) Plaintiff signed her initials next to the arbitration clause and signed the Policy. (*Id.*)

C. Procedural History

Plaintiff commenced this action on March 7, 2014. The ATP defendants moved to compel arbitration and dismiss this action on May 2, 2014. Plaintiff filed her opposition to the motion on May 30, 2014, and the ATP defendants filed their reply on June 13, 2014. The Court heard oral argument on the motion on June 24, 2014. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, the Court evaluates a motion to compel arbitration under a standard similar to the standard for a summary judgment motion made pursuant to Federal Rule of Civil Procedure 56.[2] *See*

---

[2] The parties do not dispute that the arbitration agreement at issue affects interstate commerce and is therefore subject to the FAA. *See, e.g.*, *PaineWebber*

*Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)); *see also Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order); *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012); *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 614 (E.D.N.Y. 2011). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005); *see also Jillian Mech. Corp.*, 882 F. Supp. 2d at 364 ("On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists."). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

---

*Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("Any arbitration agreement affecting interstate commerce . . . is subject to the [FAA].").

## III. DISCUSSION

The FAA "declares a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (internal quotation marks and alterations omitted). Indeed, the Second Circuit has held that "it is difficult to overstate the strong federal policy in favor of arbitration." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006). Of course, notwithstanding the policy favoring arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted).

To determine whether to dismiss or stay an action in favor of arbitration, the Second Circuit has instructed a district court to conduct the following inquiry:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)). "Courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability,'" such as "whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014). That presumption may be overcome if the parties have "'clearly and unmistakably'" delegated to an arbitration the authority to resolve issues of arbitrability. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs.*, 475 U.S. at 649). However, whether a party has agreed to arbitrate in the first place is a gateway issue that only a court can decide. *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 326 n.2 (2d Cir. 2013) (noting that, while other questions of arbitrability may be delegated to the arbitrator, "[t]he more basic issue . . . of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, 'questions of arbitrability' could hardly have been clearly and unmistakably given over to an arbitrator").

The instant case involves two agreements—the Agreement and the Policy—containing similar, but not identical, arbitration clauses. The Agreement's arbitration clause calls for arbitration in Atlanta, Georgia, while the Policy's arbitration clause calls for arbitration in Jacksonville, Florida. (*See* Kalocsay Decl. Exs. A & B.) Although the ATP defendants' motion seeks to enforce both agreements (*see* Defs.' Mot.), their memorandum and reply memorandum conclude by requesting an order compelling arbitration in Atlanta, Georgia (*see* Defs.' Mem. 9; Defs.' Reply 10). Moreover, at oral argument, counsel for the ATP defendants confirmed that they are seeking to enforce the Agreement's arbitration clause. Accordingly, the Court considers the validity and applicability of the arbitration clause in the Agreement.

5

Specifically, the Court considers two issues raised by plaintiff in an effort to resist arbitration: (1) the validity of the arbitration clause in the Agreement; and (2) the scope of that arbitration clause. The Court addresses each issue in turn.

A. Validity of the Arbitration Agreement

Although "the FAA expresses a strong federal policy in favor of arbitration," Congress enacted the FAA "to make arbitration agreements as enforceable as other contracts, *but not more so*." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (quoting *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (emphasis in original)). Accordingly, under Section 2 of the FAA, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," such as unconscionability. 9 U.S.C. § 2; *see, e.g.*, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (holding that the savings clause of § 2 "permits agreements to arbitrate to be invalided by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'" (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996))); *Nackel*, 346 F.3d at 365 ("It is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA."). "Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Doctor's Assocs.*, 517 U.S. at 687 (emphasis in original); *see, e.g.*, *Concepcion*, 131 S. Ct. at 1746. "By enacting § 2, . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Assocs.*, 517 U.S. at 687 (internal quotations and citations omitted).

1. Choice of Law

As an initial matter, the parties dispute whether Georgia or New York law applies to determine if the Agreement's arbitration clause is unconscionable. Plaintiff contends that New York law applies because the incidents that gave rise to the instant action occurred in New York, and plaintiff and two individual defendants are residents of New York. (Pl.'s Opp. 10–11.) Invoking the choice-of-law provision in the arbitration clause, the ATP defendants argue that Georgia law should apply. (Defs.' Reply 8; *see* Kalocsay Decl. Ex. A.)

Where parties call upon a federal court to determine the validity of a contract under state law, the court applies the choice-of-law rules of the state in which it is located—in this case, New York. *Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158, 161 (E.D.N.Y. 2010); *see also Champion Auto Sales, LLC v. Polaris Sales Inc.*, 943 F. Supp. 2d 346, 351–52 (E.D.N.Y. 2013) (applying New York choice-of-law rules to determine which state's law applied to decide unconscionability).[3] Accordingly, the

---

[3] "In federal question cases, federal courts generally apply a federal-law—as opposed to a state-law—choice of law analysis to determine which jurisdiction's substantive law is applicable." *Lyons v. Rienzi & Sons, Inc.*, 863 F. Supp. 2d 213, 221 (E.D.N.Y. 2012). However, the precise contours of "the law is unsettled when it comes to applying either a federal common law choice of law rule or state choice of law principles in non-diversity cases." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996). The Second Circuit offered some guidance on this issue in *Bianco v. Erkins (In re Gaston & Snow)*, holding that federal courts should not apply federal choice of law rules "where no

Court applies New York's choice-of-law rules.

The first of those rules is that "[c]hoice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citing *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993)). Absent a "substantive difference" between the laws of the competing jurisdictions, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Id.* In the instant case, although the parties dispute in their papers whether Georgia or New York law applies, both parties agreed at oral argument that Georgia law and New York law provide the same substantive rules concerning unconscionability. Moreover, the Court has conducted a thorough review of both Georgia law and New York law, and has concluded that they do not differ meaningfully on the law of unconscionability. Accordingly, the Court proceeds to consider whether the Agreement is unconscionable under New York law.

---

significant federal policy, calling for the imposition of a federal conflicts rule, exists." 243 F.3d 599, 607 (2d Cir. 2001). In this case, because the validity of a contract "does not implicate a significant federal policy and 'hinge[s] upon state law,' New York choice of law rules govern this dispute." *Kulig v. Midland Funding, LLC*, No. 13-CV-4715 (PKC), 2013 WL 6017444, at *3 (S.D.N.Y. Nov. 13, 2013); *accord Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 591 (S.D.N.Y. 2001) ("[I]n determining which state's law to apply to [the question of contract formation], I find it appropriate to rely upon the forum state's choice-of-law rules rather than the federal choice-of-law rules."), *aff'd*, 306 F.3d 17 (2d Cir. 2002).

### 2. Legal Standard

"An unconscionable contract has been defined as one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (quoting 1 *Corbin on Contracts* § 128). Ordinarily, a contractual provision will be held unenforceable only where it "was both procedurally and substantively unconscionable when made." *Id.* at 10. Inquiry into procedural unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice," and often entails consideration of "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* at 10–11; *see, e.g.*, *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003). The substantive unconscionability inquiry focuses on whether the terms of the contract are "unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 73 N.Y.2d at 11. Although both procedural and substantive unconscionability are usually prerequisites to a determination that a contractual provision is unenforceable, "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.* at 12. However, as *Gillman* indicates, such cases are rare. *See, e.g.*, *Dallas Aerospace*, 352 F.3d at 787 ("[I]t is only in the truly exceptional case that substantive unconscionability alone can vitiate a contractual duty." (quotation marks omitted)).

### 3. Application

Plaintiff argues that the terms of the Agreement's arbitration clause render it substantively unconscionable for the following four reasons: (1) the Georgia choice-of-law provision waives plaintiff's statutory rights under federal and New York law; (2) the ATP defendants hold the exclusive right to compel arbitration; (3) Georgia is an inconvenient forum for plaintiff; and (4) the provision requiring plaintiff to pay the ATP defendants' litigation costs expended to enforce the agreement to arbitrate makes arbitration cost-prohibitive. The Court determines that none of these reasons, taken in isolation or in combination, render the Agreement unconscionable.

First, plaintiff maintains that the Georgia choice-of-law provision is tantamount to a waiver of her federal statutory rights, because the choice of Georgia law operates to the exclusion of federal law. (*See* Pl.'s Opp. 3.) This argument simply misconstrues the meaning of the choice-of-law clause. "Through the Supremacy Clause [of the United States Constitution], the law of any state includes federal law, and federal law is as much the law of a state 'as laws passed by the state legislature.'" *Mudd-Lyman Sales & Serv. Corp. v. United Parcel Serv., Inc.*, 236 F. Supp. 2d 907, 910 (N.D. Ill. 2002) (quoting *Howlett v. Ross*, 496 U.S. 356, 367 (1990)). Accordingly, "[t]o the extent that a contractual choice-of-law provision provides that the law of a specific state shall apply, this includes federal law as well as state law." *Id.* (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982)); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1227 (9th Cir. 2013) ("'[T]he literal language of the contract—'the law of the place'—gives no indication of any intention to apply only state law and exclude other law that would normally be applicable to something taking place at that location. By settled principles of federal supremacy, the law of any place in the United States includes federal law.'" (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 490 (1989) (Brennan, J., dissenting))). Thus, the ATP defendants are correct that the Georgia choice-of-law provision does not waive plaintiff's federal statutory rights. Moreover, although the selection of Georgia law excludes the application of New York law, plaintiff offers no reason why the application of Georgia law in lieu of New York law is substantively unconscionable. Although ATP is a Florida corporation, its affiliate ATP USA, Inc.—a party to the Agreement—is a Georgia corporation. (*See* Kalocsay Decl. Ex. A, Agreement; Kaupp Decl. ¶¶ 9, 11 & Ex. 3.) Nor has plaintiff shown that the laws of Georgia are "truly obnoxious" to the laws of New York. *Cf. Frankel v. Citicorp Ins. Servs., Inc.*, 913 N.Y.S.2d 254, 259–60 (N.Y. App. Div. 2010) (holding that "New York courts may decline to enforce choice-of-law provisions if the chosen law does not bear a reasonable relationship to the parties or the transaction, or where the chosen law violates some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal" (internal quotation marks and citations omitted)). In sum, plaintiff has failed to establish that the Georgia choice-of-law clause is substantively unconscionable in any way.

Second, although plaintiff is correct that the Agreement gives only the ATP defendants the right to compel arbitration, "[m]utuality of remedy is not required in arbitration contracts." *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 137 (1989) (addressing arbitration contract "compelling one party to submit all disputes to arbitration but allow[ing] the other party

the choice of pursuing arbitration or litigation"). Thus, the ATP defendants' exclusive right to compel arbitration is not a basis for invalidating the Agreement.[4]

Third, the existence of a forum selection clause does not render the Agreement unconscionable. As a preliminary matter, "the existence of an arbitral forum selection clause is not *per se* substantively unconscionable." *Gill v. World Inspection Network Int'l, Inc.*, No. 06-CV-3187 (JFB) (MLO), 2006 WL 2166821, at *6 (E.D.N.Y. July 31, 2006). Moreover, although arbitrating her claims in Georgia would probably be less convenient for plaintiff than litigating them here, plaintiff has not come close to demonstrating that arbitrating in Georgia would be so burdensome as to deprive her of the opportunity to vindicate her rights. *See, e.g.*, *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 381 (S.D.N.Y. 2010) (holding that forum selection clause was not unconscionable where plaintiff did not show that litigating in chosen forum "would be so difficult as to deprive [it] of a fair opportunity to litigate its claims"), *aff'd*, 647 F.3d 472 and 435 F. App'x 31 (2d Cir. 2011); *Bernstein v. Wysoki*, 907 N.Y.S.2d 49, 55 (N.Y. App. Div. 2010) (upholding validity of forum selection clause where "plaintiffs failed to demonstrate that the forum selection clause is unreasonable or unjust, or that a trial in Wayne County, Pennsylvania, would be so gravely difficult that, for all practical purposes, they would be deprived of their day in court").

Fourth, plaintiff attacks the following provision in the Agreement: "In the event a party brings a lawsuit in violation of this agreement, the violating party shall be responsible for all expenses, including attorneys' fees, incurred in enforcing this arbitration agreement." (Kalocsay Decl. Ex. A, Agreement.) She maintains that this provision impermissibly erects a barrier to the vindication of her rights by making arbitration too expensive. (*See* Pl.'s Opp. 13.) This argument misses the mark. Plaintiff is correct that a party may avoid enforcement of an arbitration agreement where *arbitration costs* would "'preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum.'" *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 462 (E.D.N.Y. 2006) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). However, this line of cases focuses on whether a given arbitration agreement provides all parties with a meaningful ability to vindicate their rights. *See id.* (citing cases). Here, by contrast, the clause at issue relates to the payment of the other party's expenses in defending the enforceability of the arbitration agreement in litigation, and it neither shifts the costs of, nor imposes any other barriers to, the arbitration itself. To the extent plaintiff will be liable to the ATP defendants for their expenses in litigating the present motion, that is the result of plaintiff's decision to challenge the arbitration clause in this Court. In other words, the challenged clause does not preclude plaintiff from vindicating her claims in arbitration; it merely makes it more expensive for her to challenge the validity of the arbitration agreement itself in court. Plaintiff cites no authority, and this Court has found none, holding that such a

---

[4] As noted *supra*, New York law and Georgia law do not differ materially on the law of unconscionability. For instance, the Court notes that Georgia law, like New York law, does not require mutuality of remedy in arbitration contracts. *See Crawford v. Results Oriented, Inc.*, 548 S.E.2d 342, 343 (Ga. 2001) (holding that arbitration provision not unconscionable because it lacked mutuality of remedy); *Crawford v. Great Am. Cash Advance, Inc.*, 644 S.E.2d 522, 525 (Ga. Ct. App. 2007) (same).
.

provision is unconscionable. *Cf. Raff v. Maggio*, 743 F. Supp. 147, 151 (E.D.N.Y. 1990) (recognizing "the policy behind compensating a party for attorneys' fees incurred in needlessly enforcing an arbitration agreement").

In sum, plaintiff has presented no basis upon which this Court could conclude that the Agreement is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to [their] literal terms.'" *Gillman*, 73 N.Y.2d at 10. The arbitration clause does not waive plaintiff's federal statutory rights, it does not erect an impermissibly high financial barrier to plaintiff's vindication of those rights, and it is not unreasonable that it lacks mutuality of remedy. Accordingly, the Court concludes that the arbitration clause in the Agreement is not unconscionable, and is therefore valid.

B. Scope of the Arbitration Agreement

Having concluded that plaintiff and the ATP defendants are parties to a valid arbitration agreement, the Court turns to the scope of that agreement. Plaintiff contends that her statutory claims do not fall within the scope of the agreement to arbitrate. (Pl.'s Opp. 4–9.) In response, the ATP defendants argue that an arbitrator, and not this Court, should determine the scope of the arbitration agreement because the Agreement clearly and unmistakably provides for the scope of the arbitration clause to be resolved by arbitration. (Defs.' Reply 4–5.)

Based on the plain language of the Agreement's arbitration clause, the Court concludes that the parties have delegated to the arbitrator the authority to resolve issues over the arbitration clause's scope. As noted *supra*, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam*, 537 U.S. at 83 (quoting *AT&T Techs.*, 475 U.S. at 649) (brackets in original and emphasis added); *see, e.g.*, *VRG Linhas Aereas*, 717 F.3d at 325–26 & n.2; *Guida*, 793 F. Supp. 2d at 614. In other words, questions concerning the scope of an arbitration clause, *i.e.*, whether particular claims fall within the arbitration clause, are to be determined by an arbitrator, not a court, if the parties have so provided clearly and unmistakably.[5] Here, the arbitration clause calls for arbitration of "any claim, dispute, or controversy" arising out of the agreements, "including the validity or enforceability of this arbitration clause." (Kalocsay Decl. Ex. A, Agreement.) Under clear Second Circuit precedent, this language clearly and unmistakably evinces the parties' intent to submit questions of arbitrability—including scope—to arbitration. *See Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (holding that arbitration agreement demonstrates a "clear and unmistakable intent to submit questions of arbitrability to arbitration" where "the agreement plainly states the parties' intent to submit '[a]ll

---

[5] Contrary to plaintiff's contention at oral argument, an arbitrator may decide questions of arbitrability even when the issue is whether a claim brought under a federal anti-discrimination statute falls within the arbitration clause's scope. *See, e.g.*, *Washington v. William Morris Endeavor Entm't, LLC*, No. 10-CV-9647 (PKC) (JCF), 2011 WL 3251504, at *6 (S.D.N.Y. July 20, 2011) (in case concerning claims of discrimination and retaliation brought under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq.*, and state anti-discrimination laws, concluding that arbitration agreement clearly and unmistakably delegated issues of arbitration clause's scope to arbitrator). Plaintiff cites no cases to the contrary, and this Court has found none.

disputes . . . concerning or arising out of" the [contract] to arbitration"); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) ("The words 'any and all' are elastic enough to encompass disputes over . . . whether a claim is within the scope of arbitration."); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451 (2003) ("The parties agreed to submit to the arbitrator '[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract.' And the dispute about what the arbitration contract in each case means . . . is a dispute 'relating to this contract' and the resulting 'relationships.'" (emphasis in original)).

Moreover, the arbitration clause incorporates by reference "the Rules of the American Arbitration Association" ("AAA"). (*Id.*) "[W]hen an arbitration agreement explicitly incorporates the AAA Rules, numerous courts have held that the parties clearly and unmistakably agreed that the issue of arbitrability would be submitted to arbitration for resolution." *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. C 12-05797 (SBA), 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014) (citing *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 880 (8th Cir. 2009); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Clarium Capital Mgmt. LLC v. Choudhury*, Nos. C 08-5157 (SBA), 06-5255, 2009 WL 331588, at *5 (N.D. Cal. 2009)). In particular, Rule 7 of the AAA Commercial Arbitration Rules, of which the Court may take judicial notice, states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Rule R-7(a).[6] The Second Circuit has "held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (citing *Shaw Grp.*, 322 F.3d at 122; *PaineWebber*, 81 F.3d at 1202). Thus, the parties' incorporation of the AAA Rules by reference in the arbitration clause is further evidence of their clear and unmistakable intent to delegate questions of arbitrability to arbitration.

Accordingly, the Court does not decide whether plaintiff's statutory claims fall within the scope of the Agreement's arbitration clause.[7] Instead, the Court enforces the parties' clear and unmistakable intent to have this issue decided in arbitration.[8]

---

[6] Courts take judicial notice of AAA Rules on the theory that the AAA Rules are incorporated by reference in the arbitration agreement at issue, or that the AAA Rules are "a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2). *See, e.g.*, *Robbins v. B & B Lines, Inc.*, 830 F.2d 648, 651 n.6 (7th Cir. 1987); *Wallace v. Red Bull Distrib. Co.*, 958 F. Supp. 2d 811, 821 n.6 (N.D. Ohio 2013); *Collins v. Diamond Pet Food Processors of Cal., LLC*, No. 13-CV-00113-MCE, 2013 WL 1791926, at *6 n.4 (E.D. Cal. Apr. 26, 2013); *Price v. HotChalk, Inc.*, No. CV10-1611-PHX-NVW, 2010 WL 5137896, at *1 (D. Ariz. Dec. 10, 2010); *Sullivan v. Lumber Liquidators, Inc.*, No. C-10-1447 (MMC), 2010 WL 2231781, at *6 (N.D. Cal. June 2, 2010).

[7] In other words, the Court does not address plaintiff's argument that her Title IX claims fall outside the scope of the Agreement's arbitration clause.

[8] Plaintiff has not raised the separate issue whether Congress intended a Title IX claim to be

C. Staying the Litigation

For the reasons set forth above, the Court concludes that the dispute between plaintiff and the ATP defendants—including their dispute over the scope of the arbitration agreement—must be resolved by arbitration. The remaining issue relates to the relief requested by the ATP defendants. As noted, the ATP defendants move this Court to enter an order compelling arbitration in Georgia and dismissing plaintiff's claims against them. (Defs.' Mot. 1.) In the alternative, the ATP defendants move for a stay of this litigation in favor of arbitration. (Defs.' Reply 3.) Plaintiff contends, in response, that this Court cannot compel arbitration outside this judicial district. (Pl.'s Opp. 1–2.)

"The Court of Appeals for the Second Circuit has not yet decided how a district court should proceed when a suit pending before it involves an arbitration agreement which specifies that arbitration should take place outside the court's district." *Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*, 197 F. Supp. 2d 1, 2 (S.D.N.Y. 2002); *accord Champion Auto Sales*, 943 F. Supp. 2d at 355. Other courts have struggled to resolve this issue because Section 4 of the FAA requires arbitration to take place "within the district in which the petition for an order directing such arbitration is filed," but also states that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," including a forum selection clause. *See* 9 U.S.C. § 4. "Thus, § 4 embodies a mandate that in some cases may engender an internal conflict: it directs both that the court enforce an arbitration agreement in accordance with its terms and that it may direct arbitration only if it is to occur within the court's own district." *DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 727 (S.D.N.Y. 2003). In the face of this statutory ambiguity, courts have taken one of three approaches. First, some courts have granted a motion to compel arbitration outside the district pursuant to the forum selection clause of the arbitration agreement. *See, e.g.*, *Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir. 1975). However, this approach runs afoul of the FAA's requirement that arbitration must take place within the district. Second, other courts have granted a motion to compel arbitration, but have held that arbitration must take place in the court's own district. *See, e.g.*, *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781 (9th Cir. 2001). This approach has the defect of ignoring the parties' valid forum selection clause. Third, recognizing that they have no authority to compel arbitration outside their districts but wishing to enforce valid forum selection clauses, other courts have denied a motion to compel but granted a motion to stay the litigation in favor of arbitration. *See, e.g.*, *Snyder v. Smith*, 736 F.2d 409 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). However, this approach is also imperfect, as it conflicts with the FAA's provision allowing a party to move to compel

---

nonarbitrable in all cases. *Cf. Oldroyd*, 134 F.3d at 77 ("It is well settled that federal statutory claims can be the subject of arbitration, absent a contrary congressional intent."). Plaintiff bears "the burden of showing such legislative intent," *id.*, and she has failed to do so here. In any event, the Court concludes that there is no congressional intent to prevent the arbitration of Title IX claims. *Accord Peterson v. New England Inst. of Tech.*, CA 14-63-ML, 2014 WL 2573653, at *6 (D.R.I. June 9, 2014) (ordering arbitration of Title IX claim, and noting that plaintiff had "fail[ed] to establish that Congress intended to preclude a waiver of judicial remedies in Title IX cases or that, generally, the remedies she seeks—to the extent they are available in a Title IX claim—are unsuitable for arbitration").

arbitration in "any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Unfortunately, therefore, "no approach is perfect." *Champion Auto Sales*, 943 F. Supp. 2d at 356.

In considering the strengths and weaknesses of each approach, many district courts in the Second Circuit have adopted the third option. *See, e.g.*, *DaPuzzo*, 263 F. Supp. 2d at 739 ("Where a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains 'referable to arbitration' elsewhere, if a forum is designated, and must then order a stay instead, thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue."); *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (same); *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 315 (E.D.N.Y. 2001) ("Where an agreement to arbitrate specifies a venue outside of the district in which the petition is filed, no order to compel may be entered; only a stay is available."); *see also Champion Auto Sales*, 943 F. Supp. 2d at 356 (citing cases). This Court finds the reasoning of these decisions persuasive and holds that it cannot compel arbitration in Georgia. At the same time, because the Court must give effect to the parties' forum selection clause, the Court will stay this action pending arbitration of plaintiff's claims against the ATP defendants in arbitration in Georgia. *See* 9 U.S.C. § 3 (empowering courts to stay an action brought "upon any issue referable to arbitration").

Finally, the Court must address plaintiff's claims against Rosenberg, the non-moving defendant in this case. Because the Court has concluded only that plaintiff's claims against the ATP defendants are arbitrable, the Court "'must decide whether to stay the balance of the proceedings pending arbitration.'" *Guyden*, 544 F.3d at 382 (quoting *Oldroyd*, 134 F.3d at 76). In deciding this issue, a court should bear in mind that if the nonarbitrable claims are stayed pending arbitration of a plaintiff's other claims, then the plaintiff may wait "months, if not years, before [her] nonarbitrable claims will be heard by a federal court." *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987). Accordingly, courts require the party seeking a stay of the nonarbitrable claims to "demonstrate that 'there are issues common to the arbitration and the court proceeding,' and then show that 'those issues will be finally determined by arbitration.'" *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 499 (S.D.N.Y. 2013) (*Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995)). In this case, the ATP defendants take no position on whether the Court should stay plaintiff's claims against Rosenberg. In the absence of a request by any party to stay plaintiff's claims against Rosenberg, the Court concludes that plaintiff should be able to proceed against Rosenberg while she arbitrates her claims against the ATP defendants.

IV. CONCLUSION

For the reasons set forth herein, the Court denies the ATP defendants' motion to compel arbitration and dismiss the claims against them, but grants the ATP defendants' motion to stay the claims against them in favor of arbitration in Atlanta, Georgia.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 3, 2014
Central Islip, NY

\*   \*   \*

Plaintiff is represented by William Gordon Kaupp, Arce Law Group, 30 Broad Street, 35th Floor, New York, NY 10004. The ATP defendants are represented by Robyn Maria Gnudi, LeClairRyan, One Riverfront Plaza, 1037 Raymond Boulevard, 16th Floor, Newark, NJ 07102.